IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL M. WOOLERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:21-CV-1728-D |
| VS. | § | |
| | § | |
| HESHEL PEERY, et. al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

        In this action arising from an automobile and locomotive collision near Marietta,

Oklahoma, defendants National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak")

and BNSF Railway Company ("BNSF") (collectively, "defendants," unless otherwise

indicated) move to transfer this case to the Fort Worth Division of the Northern District of

Texas under 28 U.S.C. § 1404(a) for the convenience of the parties and witness and in the

interest of justice.  For the reasons that follow, the court denies the motion.

I

        Plaintiff Daniel M. Woolery ("Woolery") sues defendants Amtrak and BNSF under

the Federal Tort Claims Act, 28 U.S.C. § 1346, and defendants Michael L. Doty ("Doty")

and Hershel Peery ("Peery"),[1] alleging claims of negligence and gross negligence.  In 2020,

while driving on a private road owned by Peery in Marietta, Oklahoma, Woolery attempted

_____

        [1]In Woolery's complaint, Peery's first name is spelled both as "Heshel" and
"Hershel."  *Compare* Compl. at caption & 1, *with id.* at 2, ¶ 6.  Based likely on the spelling
in the case caption, on CM/ECF his first name is spelled "Heshel."

to cross railroad tracks owned by BNSF.  Woolery alleges that the crossing lacked adequate signage and that there was limited visibility of the tracks due to overgrown bushes. Woolery's truck became disabled on the railroad crossing and he was hit on the rear of his vehicle by a passenger train operated by Amtrak and driven by Doty.

Woolery now resides in Richardson, Texas, which is situated in the Dallas Division of the Northern District of Texas, and filed this case in the Dallas Division.  Defendants Amtrak and BNSF move to transfer the case to the Fort Worth Division under § 1404(a) for the convenience of the parties and witnesses and in the interest of justice.  Woolery opposes the motion.  The court is deciding this motion on the briefs.

## II

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.*, 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)).  "The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other."  *Sivertson v. Clinton*, 2011 WL 4100958, at *3 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (citing *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.)).  Moreover,

- 2 -

> [t]he plaintiff's choice of venue is . . . entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes omitted) (quoting *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc)).

The court must decide as a preliminary question "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004) (per curiam); *see also Volkswagen II*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue."). Once the court resolves this issue, it must in deciding whether to transfer the case evaluate "a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or] the application of

foreign law.

*Id.* (citation omitted).  "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive."  *Volkswagen II*, 545 F.3d at 315.  Defendants must establish "good cause" for transferring the case, meaning that, "in order to support [their] claim for a transfer, [they] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"  *Id.* (final brackets in original) (quoting § 1404(a)).

III

Defendants do not move to transfer this case to another judicial district; rather, they move to transfer it to another division within this judicial district.  The court holds, and the parties do not dispute, that Woolery could have filed this lawsuit in the Fort Worth Division.  Because some defendants are residents of Texas and others are residents of Oklahoma, this action could have been brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).  At least one defendant—BNSF—has its principal place of business in Fort Worth and therefore resides there.  *See* 28 U.S.C. § 1391(c)(2).  Accordingly, this district is a proper venue, and this case could have been filed in the Fort Worth Division.

IV

The court turns first to the private interest factors.

A

The first private interest factor examines the relative ease of access to sources of

- 4 -

proof.  Defendants maintain that there are no documents or physical evidence present in the Dallas Division.  They also aver that BNSF's headquarters is in Fort Worth and that any documents or evidence in its possession would be physically within the Fort Worth Division. And defendants have established that the terminating station for the train route upon which the accident occurred is in Fort Worth, but they do not explain how the location of the terminal station will be used as a source of proof.  Defendants acknowledge that other evidence is located outside of both the Dallas Division and the Fort Worth Division. Woolery does not dispute that no evidence is located in the Dallas Division.

Because some evidence is located in the Fort Worth Division and none is located in the Dallas Division, the court finds that this factor weighs slightly in favor of transfer. "Although the technological convenience of e-discovery may diminish concerns associated with the location of evidence, it does not negate the significance of or eliminate consideration of this factor in a section 1404(a) transfer analysis."  *Smith's Consumer Prods., Inc. v. Fortune Prods., Inc.*, 2015 WL 1037419, at *2 (N.D. Tex. Mar. 9, 2015) (Kinkeade, J.); *see also Davis v. City of Fort Worth*, 2014 WL 2915881, at *3 (N.D. Tex. June 25, 2014) (Fitzwater, C.J.) ("Regardless whether technological advances and email service would make litigating this case in the Dallas Division *possible*, there is still a *greater* ease of access to sources of proof in Fort Worth." (emphasis in original)).

B

The second private interest factor examines the availability of compulsory process over witnesses.  Defendants acknowledge that most witnesses can be compelled in both

divisions.  But they aver that firemen and responders from the Criner Hills Fire Department are only within the subpoena power of the Fort Worth Division.  Defendants have failed, however, to identify any *unwilling* witnesses who are outside of this court's subpoena power. Other judges of this district and other district courts within this circuit have found that the compulsory process factor should be given little weight when no party has shown that any witness is unwilling to testify.  *E.g., All. Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*, 2021 WL 5882820, at *3 (N.D. Tex. Dec. 13, 2021) (Boyle, J.) (collecting cases and explaining that, when parties fail to identify any unwilling witnesses, "courts generally find that the compulsory process factor should be given little weight"); *Koss Corp. v. Plantronics, Inc.*, 2021 WL 2075685, at *4 (W.D. Tex. May 20, 2021) ("[T]his Court attaches weight to this factor to the extent that the third-party witnesses are unwillingly to testify.").

And, most important, defendants have not sufficiently established that the Criner Hills Fire Department is outside of this court's subpoena power.  This is so because defendants rely upon the approximate driving distance between the Dallas Division courthouse and the Criner Hills Fire Department to establish that these responders are employed roughly 104 miles from the Dallas Division courthouse, and therefore outside the subpoena power of Rule 45(c)(1)(A).[2]  But because the driving route is less direct—and therefore longer—than the

---

[2]Rule 45(c)(1) provides:

Place of Compliance.  For a Trial, Hearing, or Deposition.  A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

actual distance between these two locations, this does not establish that the Criner Hills Fire Department is farther than 100 miles from the Dallas Division courthouse. Defendants have therefore failed to adduce sufficient evidence to support their assertion that the Criner Hills Fire Department is outside this court's subpoena power.

Accordingly, the court concludes that this factor is neutral.

## C

The third private interest factor considers the cost of attendance for willing witnesses. This factor "primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *4 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (declining to consider parties' employees under third factor). A party seeking a transfer must "identify the 'key witnesses and the general content of their testimony.'" *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812). "'The party seeking the transfer must specify clearly . . . the key witnesses to be called and their location and must make a general statement of what their testimony will cover.'" *AllChem Performance*

_____

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
> (i) is a party or a party's officer; or
> (ii) is commanded to attend a trial and would not incur substantial expense.

- 7 -

*Prods., Inc. v. Oreq Corp.*, 2013 WL 180460, at *4 (N.D. Tex. Jan. 17, 2013) (Fitzwater, C.J.) (quoting 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851, at 221-22 (3d ed. 2007)); *see Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *2 (N.D. Tex. Dec. 6, 2010) (Boyle, J.) (finding that defendant failed to show good cause for transfer based on this factor because it did not provide name, address, or proposed testimony of any witness who could more conveniently testify in the proposed transferee district). Although not determinative, this is the most significant factor in deciding a motion to transfer. *See Sw. Airlines Co. Profit Sharing 401(k) Comm. v. UBS Glob. Asset Mgmt. (Ams.), Inc.*, 2007 WL 268808, at *3 (N.D. Tex. Jan. 29, 2007) (Fitzwater, J.).

Defendants maintain that, even if Dallas is not significantly far from Fort Worth, this factor still supports transfer because the majority of nonparty witnesses either reside within the Fort Worth Division or reside closer to the Fort Worth Division. Defendants also posit that the Fort Worth Division is more convenient for Peery, BNSF employees, and the Amtrak employees[3] who were members of the crew when the accident occurred. Woolery responds that the Fort Worth Division is less convenient for him than the Dallas Division. He maintains that he is disabled and that it will be more difficult for him to travel to the Fort

---

[3]Defendants refer to two of the Amtrak crew members as "non-party crew members," but it is unclear whether these crew members are currently Amtrak employees. Because defendants do not state that these persons are no longer employed by Amtrak, and because defendants rely on these persons' employment records to establish their addresses, the court assumes that they are still Amtrak employees. But even assuming *arguendo* that these are former employees and therefore nonparty witnesses, defendants have not shown that the Fort Worth Division is clearly the more convenient forum as compared to the Dallas Division for these witnesses. *See infra* § IV(C) & n.4.

Worth Division courthouse than to the Dallas Division courthouse. Defendants reply that Woolery has adduced no evidence as to how his disability will make the Fort Worth Division a less convenient forum, and that Woolery will have to attend very few proceedings in person.

The court finds that defendants have not shown that the Fort Worth Division is clearly the more convenient forum for nonparty witnesses. Defendants posit that the Fort Worth Division courthouse is closer, and therefore more convenient, for a variety of nonparty witnesses, including: Love County Sheriff's Office deputies; employees of the Criner Hills Fire Department; employees of Chickasaw Nation's Lighthorse Police Department; and Trooper Jody Cornelison ("Trooper Cornelison") and other members of the Oklahoma Highway Patrol. But the only witness whom defendants specifically identify is Trooper Cornelison, and they do not provide his address—although they do provide the address of his workplace—or a summary of his anticipated testimony. The court therefore concludes that defendants have failed to demonstrate that the Fort Worth Division is the more convenient forum for these witnesses.

The court finds that, to the extent that the convenience of parties and their employees carries any weight, defendants have not demonstrated that the Fort Worth Division is clearly the more convenient forum as compared to the Dallas Division for party witnesses and employees of party witnesses. With respect to employees of party witnesses, defendants

have established that one member[4] of the Amtrak crew—William Helm ("Helm")—resides in Arlington, Texas (Tarrant County), which is in the Fort Worth Division.  *See* 28 U.S.C. § 124(a)(2).  But the driving distance between Helm's residence and the Dallas Division courthouse is only approximately 4.8 miles longer than the driving distance between his residence and the Fort Worth Division courthouse.[5]  Defendants also assert that Fort Worth is more convenient for employees of BNSF because they work in Tarrant County at BNSF's headquarters.  But defendants do not identify any specific BNSF employees who will be called as witnesses.

Defendants maintain that the Fort Worth Division is more convenient for defendant Peery, who witnessed the collision.  But defendants' own evidence demonstrates that the travel distance between Peery's residence and the Dallas Division courthouse is only

_____

[4]At one point defendants assert that both crew members reside in Tarrant County, *see* Ds. Br. 12, but their factual allegations and evidence demonstrate that one employee lives in Tarrant County and the other lives in Denton County—which is located in the Sherman Division of the Eastern District of Texas.  Ds. Br. 3 at ¶¶ 14, 16; Ds. App. 14; *see* 28 U.S.C. § 124(c)(3).  And, based on Google Maps driving directions, the crew member's Denton County residence is actually closer to the Dallas Division courthouse than to the Fort Worth Division courthouse.

[5]Defendants have provided Google Maps driving directions for other parties, but not for these "non-party crew members."  "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2)), and it "may take judicial notice on its own," Fed. R. Evid. 201(c)(1).  The court will therefore take judicial notice, based on Google Maps, that the shortest driving distance between Helm's residence and the Dallas Division courthouse is approximately 25.9 miles, and the shortest driving distance between Helm's residence and the Fort Worth Division courthouse is approximately 21.1 miles.

approximately 5.6 miles longer than the travel distance between Peery's residence and the Fort Worth Division courthouse.  Thus the court finds that the Fort Worth Division is not a clearly more convenient venue than the Dallas Division for defendants and their employees.

The court concludes that this factor is neutral.  Defendants have only established that the Fort Worth division is marginally more convenient for Helm and Peery.  But Woolery has averred that the Fort Worth Division is less convenient for him.  Thus to the extent that the convenience of party witnesses is even given weight, transferring this case would merely shift the inconvenience from one party to another—something this court may not do.  *See Sw. Airlines Co. Profit Sharing 401(k) Comm.*, 2007 WL 268808, at *5.

## D

The fourth private interest factor is a catch-all consideration that includes all other practical problems that make trial of a case easy, expeditious, and inexpensive.  Defendants argue that because this motion was filed before the issuance of a scheduling order, transferring this case would not cause significant delay.  Woolery responds that the transfer would prejudice him because defendants have substantial operations in Fort Worth and therefore potential jury members will likely have ties to defendants.

The fourth factor does not weigh in favor of transfer.  Defendants are correct that because their motion was filed before the court entered a scheduling order, transferring this case is less likely to result in significant delay.  But defendants do not make any argument that this case will be resolved *more* expeditiously by the Fort Worth Division than the Dallas Division.  *See Koss Corp.*, 2021 WL 2075685, at *6 ("[E]ven if this Court finds that this case

is still in the early stages of litigation; this is not a positive reason in favor of transfer."). The fourth factor, however, does not weigh against transfer either. Woolery's argument concerning a potentially tainted jury pool is misplaced. Even assuming that the potential of a biased jury pool can or should be considered when evaluating whether a case should be transferred under § 1404(a), Woolery has not adduced any evidence that it will be difficult to assemble a disinterested jury in the Fort Worth Division. His response brief does not cite any evidence regarding the number of employees defendants employ in Fort Worth. And, as defendants point out in their reply brief, the Forth Worth Division encompasses a large population base and there is no evidence that defendants' contacts with the area would taint the jury pool.

The court finds that this factor is neutral.

## V

The court next considers the public interest factors.

## A

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues. Neither defendants nor Woolery takes a position on this factor. Accordingly, the court finds that this factor is neutral.

## B

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex.

Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402

F.Supp.2d 786, 792 (S.D. Tex. 2005)).  As discussed above, it is undisputed that the majority

of the events giving rise to this lawsuit took place in Oklahoma.  Defendants, however,

maintain that the Fort Worth Division has more of a local interest in adjudicating this matter

because BNSF's primary place of business is in Forth Worth and several of the witnesses

reside in or do business in Forth Worth.  The court notes, however, that Woolery is a resident

of the Dallas Division.  Because the only interest on either side is the parties' ties to their

preferred forum, both fora are equally interested and/or disinterested.

The court concludes that this factor is neutral.

C

The third factor addresses the familiarity of the forum with the law that will govern

the case.  The court finds that this factor is neutral since the judges of both the Dallas

Division and Fort Worth Division are equally capable of interpreting and applying the federal

law and Oklahoma law that applies to Woolery's claims.

D

The fourth public interest factor considers the avoidance of unnecessary problems of

conflict of laws or the application of foreign law.  Neither side argues that there is a problem

of conflict of laws or applying foreign laws.  The court concludes that this factor is neutral.

E

Considering all the relevant factors holistically, the court holds that defendants have

failed to establish that the Fort Worth Division is clearly the more convenient forum when

- 13 -

compared with the Dallas Division.  All of the public interest factors are neutral.  And although one of the private interest factors weighs slightly in favor of transfer, this is not sufficient to meet defendants' "significant" burden.

*   *   *

For the reasons stated, defendants' motion to transfer is denied.

**SO ORDERED**.

January 3, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE